PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/02/2023 12:03 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Jackson Aubry, Deputy Clerk

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

REBEKA RODRIGUEZ, individually and on behalf of all others similar situated,

Plaintiffs,

v.

BISSELL INC., a Michigan corporation d/b/a WWW.BISSELL.COM,

Defendant.

Case No. 23STCV12416

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT**

Filed:
Trial Date: None Set

## I. INTRODUCTION

Defendant encourages consumers to watch videos on its website at www.bissell.com. Each video is a "digital trojan horse" that Defendant uses to secretly collect unique personally identifiable information ("PII") about visitors, which Defendant then reports to Google alongside the title of every video watched. Defendant then monetizes the secretly-harvested PII by bombarding unsuspecting visitors with targeted marketing based upon their video viewing habits.

Defendant's actions constitute a clear violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). As such, Defendant is liable to each class member for $2,500 per violation.

## II. JURISDICTION AND VENUE

1. As a Court of general jurisdiction, This Court has jurisdiction over all matters presented to it per the mandates of the California Constitution. Under the doctrine of concurrent jurisdiction, this jurisdiction extends to matters arising under federal law, as this case does. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981).

2. Venue is proper in this County in accordance with California Code of Civil Procedure Section 394(b) because "none of the defendants reside in the state." As such, venue is proper "in any county that the plaintiff may designate in his or her complaint."

3. Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure Section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of revenues from its website based upon interactions with Californians (including instances in which the website operates as a "gateway" to sales), such that the website "is the equivalent of a physical store in California." Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

## III. PARTIES

4. Plaintiff is a resident of California. Plaintiff is also a consumer privacy advocate who works as a "tester" to ensure that companies abide by the privacy obligations imposed by federal law.

As an individual who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Indeed, the Ninth Circuit recently made exceptionally clear that it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, and that Courts must not make any impermissible credibility or standing inferences against them. *See Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

5. Defendant is a flooring products company based in Michigan that sells products via its website and through retailers throughout the United States and in this County.

## IV. FACTUAL ALLEGATIONS

### A. Background of the Video Privacy Protection Act.

6. The Video Privacy Protection Act of 1988 (18 U.S.C. § 2710) ('VPPA') regulates the disclosure of information about consumers' consumption of video content. In summary, the VPPA prohibits businesses that deliver "video cassette tapes or similar audio visual materials" from "knowingly disclosing, to any person, personally identifiable information concerning any consumer of such provider. . . .,". 18 U.S.C. § 2710(a)-(b).

7. Indeed, the Harvard Law Review approvingly summarizes the VPPA as follows:

*In the United States' patchwork privacy regime, the VPPA is a unique gap-filler, extending protection to the expressive activities recognized as vital to the First Amendment but left underprotected by the Fourth. This Chapter argues that technological and doctrinal changes have done less damage to the Video Privacy Protection Act than one might expect. . .The VPPA and recent cases deploying the Act suggest that courts are not hesitant to recognize privacy harms as "injuries" when the harms implicate intellectual privacy. Because of its broad, technology-neutral language, the VPPA has managed to weather the past forty years. Though the statute's effectiveness, like that of any other statute, depends on reasonable judicial interpretation, the VPPA's resilience despite technological and doctrinal changes indicates that the statute might prove an appropriate model for the next logical step in safeguarding the privacy of expressive activity: federal reader privacy legislation.*

The Video Privacy Protection Act as a Model Intellectual Privacy Statute, 131 Harv. L. Rev. 1766 (April 2018).

**B. Defendant is a Video Tape Services Provider under the VPPA.**

8. Defendant advertises video content on its website and encourages visitors to its website to watch the video content that Defendant hosts there:

**FIGURE 1**




9. Defendant is substantially involved in the creation and distribution of video content to visitors to its website. As shown above, the video content is uniquely tailored to serve several core purposes of Defendant's business such as promoting brand awareness, encouraging visitors to use and purchase Defendant's products, and encouraging visitor engagement with Defendant's website.

10. The use of website videos is an integral part of Defendant's business, and the creation, editing, and distribution of such videos is a significant part of Defendant's core operations.

11. Based on the preceding facts, Defendant is a "video tape service provider" as defined by the VPPA. Indeed, multiple courts have held that companies that deliver audiovisual content over the internet are subject to the VPPA. *See, e.g.*, *Belozerov v. Gannett Co., Inc.*, - F. Supp. 3d -, 2022 WL 17832185, at *3 (D. Mass. Dec. 20, 2022); *Czarnionka v. The Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (websites that noting complaint's allegation that owner/operator of theepochtimes.com delivers audiovisual materials including "news programs, television shows, documentaries, movies, and other audiovisual content"); *Lebakken v. WebMD, LLC*,

2022 WL 16716151, at *1, *3 & n.2 (N.D. Ga. Nov. 4, 2022) (noting allegation that owner/operator of WebMD.com provides "online health information and medical news"); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (noting allegation that bostonglobe.com "is engaged in the business of delivering various types of video content"); *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) (Seeborg, J.) (denying motion to dismiss regarding walmart.com); *In re Hulu Privacy Litig.*, 2012 WL 3282960 at *6 (rejecting argument that VPPA does not cover streaming service purportedly because VPPA does not expressly cover digital distribution).

**C. Plaintiff is a Both a "Consumer" and a "Subscriber" Under the VPPA.**

12. The VPPA defines the term "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added).

13. Plaintiff watched the video set forth above titled ***"Bissell CrossWave Product Line"*** in 2023 on Defendant's website at the link https://www.bissell.com/products/crosswave-hydrosteam.html.

14. Plaintiff has purchased goods from Defendant in the past. As such, Plaintiff is a "consumer" under the VPPA.

15. Plaintiff has downloaded Defendant's "app" onto Plaintiff's smart phone. As such, Plaintiff is also a "subscriber" under the VPPA. As explained by the Eleventh Circuit, "payment is not a necessary element of subscription." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) (holding that subscribing to free periodicals, newsletters, blogs, videos, and other services qualifies as "subscriber" under the VPPA. *8); *see also Belozerov*, 2022 WL 17832185, at *3 (no payment necessary to qualify as a subscriber under the VPPA); and *Yershov v. Gannett Satellite Info Network, Inc.*, 820 F.2d 482, 487 (1st Cir. 2016) ("we decline to interpret the statute as incorporating monetary payment as a necessary element").

**D. Defendant Knowingly Disclosed Plaintiff's Personally Identifying Information to Google.**

16. The VPPA defines "personally identifiable information" or "PII" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

17. Google is an American multinational technology company focusing on artificial intelligence, online advertising, search engine technology, e-commerce, and consumer electronics. Plaintiff has a Google account uses the Google browser to navigate the internet.

18. Defendant tracks the videos that visitors watch on its website and reports each visitor's video-watching behavior to Google via the use of a tool known as "Google Analytics", which many authorities regard as spyware. At the same time Defendant reports the titles watched to Google, Defendant also reports each visitor's corresponding _gid cookie, which is a unique personal identification number assigned to each user's Google account. The _gid cookie operates as a "digital passport" that allows every website operator to identify a particular visitor by name, address, and location.

19. The below exemplars show how Defendant reports both the title of videos viewed, along with the _Gid cookie that allows Google to identify every consumer by name, as well as corresponding visitor PII to Google:

**FIGURE 2**




**FIGURE 3**

Google Tag Assistant Legacy

Tag Assistant is changing Learn more

Pageview

URLs

en-us

UTF-8

BISSELL® CrossWave Product Line

30 bit

0

20. Defendant's reporting to Google identifies a specific person as having viewed a specific video at a specific time and a specific place. In other words, Defendant's actions readily permit an ordinary person to identify Plaintiff's video-watching behavior.

21. **In summary, Defendant knowingly does <u>precisely</u> what VPPA prohibits: specifically, it discloses to third parties the personally identifiable information (PII) of consumers derived from their video viewing habits, along with the title of any videos viewed by particular consumers. It does so secretly and without users' effective consent. Defendant's conduct is illegal, offensive, and contrary to visitor expectations.**

## V. CLASS ALLEGATIONS

22. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on The Website and whose PII was disclosed by Defendant to any third party during the two years preceding the filing of this action (the "Class Period").**

23. **Numerosity:** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

24. **Commonality and Predominance:** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

a) whether Defendant is a VTSP under the VPPA;

b) whether class members are "consumers" under the VPPA;

c) whether Defendant knowingly disclosed class members' PII to Google; and

d) whether Defendant's disclosures were committed knowingly.

25. **Typicality:** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used the Website to play videos, and had PII collected and disclosed by Defendant.

26. **Adequacy:** Plaintiff has retained qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class.

27. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. Plaintiff anticipates no difficulty in the management of this action as a class action.

## VI. CAUSE OF ACTION

## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

## 18 U.S.C. § 2710, *et seq.*

28. Defendant is a "video tape service provider" under the VPPA as set forth above. *See* 18 U.S.C. § 2710(a)(4) (emphasis added).

29. Plaintiff and members of the Class are "consumers" and "subscribers" as set forth above. *See* 18 U.S.C. § 2710(a)(1) (emphasis added).

30. Defendant disclosed Class members' PII to Google as set forth above.

31. Defendant did so knowingly as set forth above.

32. Defendant did so without informed, effective consent as set forth above.

33. For violating the VPPA, Defendant is liable for (1) statutory damages in the amount $2,500 per violation; (2) punitive damages; and (3) recovery of attorneys' fees. *See* 18 U.S.C. § 2710(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

a. For appropriate class certification orders;

b. For all relief available under the VPPA, including without limitation statutory damages, punitive damages, and attorneys' fees;

c. For any and all other relief, at law or equity, that may be appropriate.

Dated: June 1, 2023

PACIFIC TRIAL ATTORNEYS, APC

By:______________________
Scott. J. Ferrell
Attorneys for Plaintiff